Reed-JL v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-242-CR

Â Â Â Â Â Â Â Â JOHNNY L. REED,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â Â Â Â v.

Â Â Â Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 13th District Court
Navarro County, Texas
Trial Court # 25,355
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Â Â Â Â Johnny L. Reed was sleeping in a car driven by Joezell Charles on Interstate 45 in Navarro
County when Charles was stopped for speeding by State Trooper Michael Turner. During the
stop, Officer Turner searched the vehicle, found cocaine, and arrested both the driver and Reed
for possessing the substance. Reed filed a motion to suppress the evidence, and when the court
denied his motion, pled guilty and filed this appeal. He asserts in a single point that the court
improperly denied his motion to suppress because of insufficient "affirmatively links" between him
and the contraband. 
Â Â Â Â Â Â Â Â Â Â Turner saw a maroon Chrysler travelling north on IH-45 and began to "pace" the vehicle. 
Because he determined that the vehicle was exceeding the posted limit of 65 miles per hour, he
activated his emergency lights. The Chrysler stopped on the improved shoulder, and Turner
stopped his vehicle behind it. When Turner requested a driver's license, the driver said that his
license had expired and gave Turner a Texas Department of Corrections Identification Card, which
identified him as Charles. Turner said that Charles was "nervous."
Â Â Â Â Â Â Â Â Â Â When Turner searched Charles for weapons, he discovered "a large bulge" in his left front
pants pocket. When Charles removed it, Turner saw a brown plastic medicine bottle with a white
cap. When asked what it contained, Charles became "very nervous and shaky." He told Turner
that it was medicine for a toothache that his passenger had. Turner, seeing that the bottle had no
label and appeared to be very old, opened the bottle and smelled a "strong odor of cocaine." 
When he asked Charles again what the bottle contained, Charles "just looked at the ground and
said nothing." He then admitted that it was "rock cocaine."
Â Â Â Â Â Â Â Â Â Â Turner went to the passenger's door of the Chrysler, opened the door, and asked Reed for
some type of identification, which he produced. Reed told Turner that he had borrowed the car
from a friend in Wichita Falls and that he and Charles were travelling from Houston to Dallas. 
Turner told Reed about the cocaine and asked him to stand outside of the car while he searched
it. In the back, he found two jackets in the driver's-side seat and a small dark colored bag in the
passenger's-side seat. Under that bag, he found a "brown colored plastic sack, tied in a knot." 
Inside that bag, a brown paper sack contained a small clear plastic baggie with a "light brown
colored waxy substance" that Turner believed was more rock cocaine. Another clear plastic
baggie contained a "white powder substance" that Turner believed to be powdered cocaine.
Â Â Â Â Â Â Â Â Â Â Turner arrested both Charles and Reed, transported them to the Navarro County jail, and
made an inventory of the vehicle. Laboratory tests showed the waxy substance to weigh 8.2
ounces and the powder to weigh 5 grams. Reed was charged with aggravated possession of a
controlled substance.
Â Â Â Â Â Â Â Â Â Â Prior to trial, Reed filed a motion to suppress the evidence of the substances that Turner
had found. He agreed with the State that the court could decide the motion on the basis of the
facts that are contained in the trooper's offense report. The court denied the motion to suppress
and Reed pled guilty. His sole point on appeal asserts:
The trial court erred in denying the appellant's motion to suppress because there
were insufficient affirmative links between the defendant and the contraband seized from
the vehicle in which he was a passenger to show that he exercised care, control, and
management over the contraband and that he knew the matter possessed was contraband.
Â Â Â Â Â Â Â Â Â Â The State's first contention that the record is insufficient to allow us to review the court's
denial of the motion to suppress is moot because the record was supplemented after the State's
brief was filed. The State next asserts that Reed failed to show that the search was conducted
without a warrant. However, the stipulated facts contained in Turner's offense report are subject
to no other interpretation but that he was so arrested. Finally, the State points out that reliance
on an "affirmative links" analysis is misplaced when testing the validity of a search, as that
analysis is appropriate for testing the sufficiency of the evidence to support a conviction. Having
said that, the State proceeds to defend the search on the grounds that Turner had probable cause
to conduct it. We agree with the State.
Â Â Â Â Â Â Â Â Â Â Under the automobile exception, an officer may conduct a warrantless search of a motor
vehicle if the officer has probable cause to believe that the vehicle contains evidence of a crime. 
Amos v. State, 819 S.W.2d 156, 161 (Tex. Crim. App. 1991).
Â Â Â Â Â Â Â Â Â Â The "totality of the circumstances" test is used to determine whether probable cause existed
for a warrantless search. Amores v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). The
State bears the burden of proving the existence of probable cause to justify a warrantless search. 
Id. Probable cause exists when the facts and circumstances within the officer's knowledge and of
which he has reasonably trustworthy information are sufficient in themselves to warrant a belief
by a man of reasonable caution that a particular person has committed or is committing an offense. 
Id.
Â Â Â Â Â Â Â Â Â Â Reed does not contest Turner's right to stop Charles or to search him. Having found an
old, unlabeled prescription-type bottle that he was told contained medicine for the passenger and
having found that it contained a substance that Charles admitted was cocaine, Turner had probable
cause to believe that the vehicle contained evidence of a crime. Amos, 819 S.W.2d at 161. Thus,
he was authorized to search it. Amores, 816 S.W.2d at 413. 
Â Â Â Â Â Â Â Â Â Â Because Turner was authorized to search the vehicle in which Reed was a passenger
without a warrant, the court correctly denied the motion to suppress the evidence that Turner
found. We overrule the point and affirm the judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BILL VANCE
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Before Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed March 20, 1996
Do not publishÂ Â Â Â Â Â Â Â Â Â 



5" Month="10">October 15, 2003, on the report of a disturbance.  He and another officer had been called to La
Mirage II the week before regarding AppellantÂs family and, at that time,
issued written warning citations to Appellant, his mother, and one brother to
stay off the property.Â  The written
warning to Appellant was issued on October 8, 2003, and it purports to bear AppellantÂs signature.Â  On October 15, Officer Arnold, after having
to threaten to enter the apartment because Appellant was initially hiding
inside, found Appellant in SusannaÂs apartment and arrested him for criminal
trespass for violating the warning issued to him on October 8.Â  Officer Charles Herron accompanied Officer
Arnold on October 15, and his testimony corroborated Officer ArnoldÂs
testimony.Â  Both officers testified that
the warning as to Appellant was still valid on October 15 and that it had not
been removed by La Mirage II.Â  Wiethorn
and assistant manager Brenda Lerma of La Mirage II testified that once someone
is warned off the property, they are not allowed back on the property, and they
both testified that they did not give permission to Appellant or his mother or brother
to return to SusannaÂs apartment after the written warnings had been issued.

Bertha and Susanna testified that they did not
know that Appellant had also been warned off the property on October 8.Â  Susanna testified that Appellant and his
youngest brother were living at her apartment after the eviction and that she
thought they had not been warned off the property.Â  Also, Susanna said that she had obtained verbal
permission (through SusannaÂs daughter as an interpreter) from Wiethorn for Bertha
to be on the property, in that Bertha was allowed to pick up and drop off her children
(which would include Appellant) and SusannaÂs children for school and that
BerthaÂs children would be with Bertha on these occasions.Â  Both Wiethorn and Lerma denied that they gave
any verbal permission to Bertha for her or Appellant to be on the property, and
Wiethorn denied even having such a conversation with Susanna. Â On October 15, at the time of AppellantÂs
arrest, Susanna said that Bertha had just brought all the children from school
and had also brought some food for Susanna to cook because, Susanna explained,
after being evicted, Bertha did not have a place to cook at the place she had
moved to.Â  Bertha testified that
Appellant was at the apartment on October 15 because she had just picked him
and the other children up from school and that Appellant had to be with her at
that time.Â  Bertha admitted her understanding
that she could not come to SusannaÂs apartment, but she said that she did so
anyway because she was dropping off the children from school and getting food
for her children to eat. Â (Bertha was
also arrested for criminal trespass on October 15 and pled guilty).




Legal
Sufficiency

Â Â Â Â Â Â Â Â Â  Appellant
argues that the evidence is legally insufficient to support the trial courtÂs
finding of true on the charged allegation of engaging in the delinquent conduct
of criminal trespass.[1]Â  When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of the penal offense that
forms the basis of the finding that the juvenile engaged in delinquent conduct,
we must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.Â  See Jackson v.
Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d
560 (1979).Â  The standard is the same for
both direct and circumstantial evidence cases.Â 
Kutzner v. State, 994 S.W.2d
180, 184 (Tex. Crim. App. 1999).

We do not resolve any conflict of fact or assign
credibility to the witnesses, as this was the function of the trier of the
fact.Â  See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman v. State, 828 S.W.2d 418, 421
(Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991).Â 
Instead, our duty is to determine if both the explicit and implicit
findings of the trier of fact are rational by viewing all of the evidence
admitted at trial in a light most favorable to the verdict.Â  Adelman,
828 S.W.2d at 422.Â  In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Â Curry v.
State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); Matson, 819 S.W.2d at 843.

The State was required to prove beyond a
reasonable doubt that Appellant knowingly or intentionally entered or remained
on the property of another after receiving notice that entry was
forbidden.Â  Tex. Pen. Code Ann. Â§ 30.05(a)(1) (Vernon 2003); see Holloway v. State, 583 S.W.2d 376,
377 (Tex. Crim. App. 1979); Bader v.
State, 15 S.W.3d 599, 606 (Tex. App.ÂAustin 2000, pet. refÂd).Â  Generally, the culpable mental state may be
inferred from circumstantial evidence.Â  See Dillon v. State, 574 S.W.2d 92, 94
(Tex. Crim. App. 1974).

Â Â Â Â Â Â Â Â Â  Appellant
asserts that there is no evidence upon which the trial court could rationally
have found that he criminally trespassed because no trier of fact could
conclude that the State proved the mens
rea element of criminal trespass beyond a reasonable doubt because
Appellant, a minor, was at the apartment at the behest of his mother.Â  Appellant argues that the State did not
contradict BerthaÂs testimony that Appellant was at the apartment only because
she required him to be there because she was dropping off all the children from
school and bringing food for her children to be cooked at the apartment.Â  The trial court, however, was the sole judge
of BerthaÂs credibility and was free to disregard it.Â  See
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).Â  Moreover, SusannaÂs testimony that Appellant
was living at her apartment is inconsistent with BerthaÂs testimony about why
Appellant was there that day, and BerthaÂs testimony that Appellant was not
warned away is contradicted by the testimony of apartment management and Officer
Arnold and by the written warning itself.Â 
BerthaÂs testimony that she knew she should not be on the property was
also contradicted by SusannaÂs testimony about receiving verbal permission for
Bertha to be on the property.

Â Â Â Â Â Â Â Â Â  The
State established through Officer Arnold that Appellant was warned away in
writing from the property and through circumstantial evidence that Appellant
knowingly returned to the property in violation of the warning.

Considering all of the evidence in the light
most favorable to the verdict, the trial court could rationally have found
beyond a reasonable doubt that Appellant committed the offense of criminal
trespass.Â  Jackson, 443 U.S. at 318-319, 99 S.Ct. at 2788-89.Â  Finding the evidence to be legally
sufficient, we overrule this issue.

Mistake
of Fact

Â Â Â Â Â Â Â Â Â  In
his second issue, Appellant asserts that the trial court erred because
Appellant established that heÂand his familyÂcommitted a mistake of fact as to
his right to be on the subject property.

ÂIt is a defense to prosecution that the actor
through mistake formed a reasonable belief about a matter of fact if his
mistaken belief negated the kind of culpability required for commission of the
offense.ÂÂ  Tex. Pen. Code Ann. Â§ 8.02(a) (Vernon 2003).Â  A reasonable belief is one held by an
ordinary and prudent person under the same circumstances as the actor.Â  Winkley
v. State, 123 S.W.3d 707, 712 (Tex. App.ÂAustin 2004, no pet. h.).Â  It is the defendant, rather than a third
person, who must labor under the mistake of fact.Â  Lasker
v. State, 573 S.W.2d 539, 542 (Tex. Crim. App. [Panel Op.] 1978).Â  The mistake-of-fact defense does not look at
all to the belief or state of mind of any other person; it impliedly looks to
the conduct of others only to the extent that such conduct contributes to the
actorÂs mistaken belief.Â  Johnson v. State, 734 S.W.2d 199, 203-04
(Tex. App.ÂHouston [1st Dist.] 1991, pet. refÂd).

Â Â Â Â Â Â Â Â Â  If
there is a reasonable doubt with respect to the existence of a defense, the
accused must be acquitted.Â  Tex. Pen. Code Ann. Â§ 2.03(d) (Vernon
2003); Winkley, 123 S.W.3d at 712.Â  In other words, the trier of fact must find
against the defendant on the defensive issue beyond a reasonable doubt.Â  See
Sexton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Â Â Â Â Â Â Â Â Â Â Â  In
Zuliani v. State, the court held that
when a defendant challenges the factual sufficiency of the rejection of a
defense, we must review all of the evidence in a neutral light and ask whether
the StateÂs evidence, taken alone, is too weak to support the finding and
whether the proof of guilt, although adequate if taken alone, is against the
great weight and preponderance.Â  Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).Â  But in Zuniga v. State, the court recently clarified the standard of
review for factual sufficiency challenges. Zuniga
v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004).

When conducting a factual sufficiency review of
the evidence, we consider all of the evidence, but we do not view it in the
light most favorable to the verdict.Â  Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).Â  We may find the
evidence to be factually insufficient in two ways.Â  Zuniga,
144 S.W.3d at 484.Â  First, evidence is
factually insufficient when the evidence supporting the finding of guilt,
considered alone, is too weak to support the finding beyond a reasonable
doubt.Â  See id.Â  Second, evidence is
also insufficient when contrary evidence is so strong that guilt cannot be
proven beyond a reasonable doubt.Â  See id. at 484-85.Â  However, in our factual sufficiency review,
we must still give appropriate deference to the trier of fact and should not
intrude upon its role as the sole judge of the weight and credibility given to
evidence presented at trial.Â  See Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis, 922 S.W.2d at 133.

Roy v.
State addresses ZunigaÂs implication when the defendant
challenges the factual sufficiency of the rejection of a mistake-of-fact defense:

In [clarifying the factual sufficiency standard
of review, Zuniga] did not
specifically address whether the modified standard applies when a defendant
challenges the rejection of a defense. However, the court expressed its desire
to resolve any conflicts in the standard of review for factual sufficiency by
(1) linking the burden of proof at trial to the standard of review on appeal
and (2) avoiding language that suggested a lower burden of proof was required. Â [Zuniga,
144 S.W.3d at 485.]Â  Thus, the court
concluded that because the State is required to prove the defendant's guilt
beyond a reasonable doubt, any standard of review that suggested the lower
burden of proof, preponderance of the evidenceÂwhether or not it was actually
employedÂwas inappropriate. Â Id.

. . .

Following Zuniga,
we first look at the burden of proof of the parties at trial when, as in this
case, the defendant raises the defense of mistake of fact. Â See id.
Â The defendant bears the initial burden
to present evidence raising the defense; however, once the defense is raised,
the State bears the burden of persuasion to disprove the defense. Â Bruno v.
State, 812 S.W.2d 56, 59-60 (Tex. App.ÂHouston [14th Dist.] 1991), aff'd, 845 S.W.2d 910, 912 (Tex. Crim.
App. 1993); Anderson v. State, 11
S.W.3d 369, 372 (Tex. App.ÂHouston [1st Dist.] 2000, pet. ref'd). Â The State meets its burden by proving its case
beyond a reasonable doubt. Â Bruno, 812 S.W.2d at 59-60. Â Thus, the State's burden does not decrease
once the mistake of fact defense is raised; rather, the State must disprove the
defense by proving its case beyond a reasonable doubt. Â Id. 

Â 

Because Zuliani's
standard for reviewing the factual sufficiency of the rejection of a defense
utilizes "great weight and preponderance" language, and the Zuniga court resolved some of the
confusion that developed post-Clewis
by avoiding language suggestive of a preponderance of the evidence burden of
proof, we interpret Zuniga to modify
the standard of review for rejection of a defense. Â Accordingly, we adopt the Zuniga modification for the standard of review when the defendant
challenges the rejection of a defense. Â Thus, when the defendant challenges the
rejection of a defense on factual insufficiency grounds, we view all the
evidence in a neutral light and determine whether (1) the evidence supporting
the rejection of the defense, when considered by itself, is too weak to support
the rejection beyond a reasonable doubt or (2) contrary evidence, if present,
is strong enough that the beyond-a-reasonable-doubt standard could not be met. Â See
Zuniga, [144 S.W.3d at 484-85.]Â  This
revised standard encompasses both objectives stated in Zuniga; first, it directly links the burden of proof to the
standard of review on appeal, and second, it removes the great weight and
preponderance language from the standard of review. Â See Zuniga,
[144 S.W.3d at 484.]

Â 

Roy v.
State, --- S.W.3d ---, ---, 2004
WL 1607489 at *3-4 (Tex. App.ÂHouston [14th Dist.] 2004, no pet. h.).

Â Â Â Â Â Â Â Â Â  We
agree with RoyÂs analysis and will apply it to AppellantÂs mistake-of-fact
defense and factual-sufficiency issue.Â 
As Roy notes, the defendant bears the initial burden
of producing some evidence to raise a regular defense such as mistake of fact,
and once the defense is raised, the State bears the burden of persuasion to
disprove the defense. [2]Â  Id. at ---, *4.Â 
The State meets its burden of persuasion by proving its case beyond a
reasonable doubt and thus need not produce evidence directly refuting the
evidence of the defense.Â  Zuliani, 97 S.W.3d at 594; Roy, at ---, 2004 WL 1607489 at *4.

By its finding of true, the trial court believed
that Appellant knew he did not have permission to be on the property, thus
implicitly finding against AppellantÂs mistake-of-fact defense.Â  While there is some evidence that Susanna
believed that Appellant had permission to return to the property, Appellant did
not produce any evidence that he believed
that he had permission to return to the property.Â  Appellant thus did not meet his initial
burden of production.Â  Nevertheless, the
StateÂs evidence on the permission issue (the apartment managers both testified
that permission was not given after Appellant was warned off, and the officers
testified that Appellant was hiding in the apartment until they threatened to
enter), when considered by itself, is not too weak to support the implicit rejection
of AppellantÂs defense.Â  Cf. Winkley, 123 S.W.3d at 712 (affirming
trespass conviction and rejecting defendantÂs factual sufficiency issue on
mistake-of-fact defense where she testified she had received oral permission to
enter property, but person allegedly giving permission testified he did not
give her permission).

We thus conclude that the evidence is factually
sufficient to support the trial courtÂs implied finding against AppellantÂs
defense.Â  AppellantÂs second issue is
overruled.

Conclusion

Â Â Â Â Â Â Â Â Â  Having
overruled both issues, we affirm the judgment.

Â 

BILL VANCE

Justice

Â 

Before Chief
Justice Gray,

Justice Vance,
and

Justice Reyna

Affirmed

Opinion
delivered and filed April 20, 2005

[CV06]











Â Â Â  [1]Â Â Â Â Â Â  The StateÂs burden of proof in a juvenile
case is beyond a reasonable doubt.Â  Tex. Fam. Code Ann. Â§ 54.03(f) (Vernon Supp. 2004-05); see In re R.X.F., 921 S.W.2d 888, 899 (Tex. App.ÂWaco 1996, no
writ).Â  We thus apply the criminal
standard of review for legal sufficiency of the evidence.Â  In re
K.B., 143 S.W.3d 194, 199 (Tex. App.ÂWaco 2004, no pet. h.); In re C.P., 998 S.W.2d 703, 708 (Tex.
App.ÂWaco 1999, no pet.); In re R.X.F.,
921 S.W.2d at 899.

Â 





Â Â Â  [2]Â Â Â Â Â Â  With an affirmative defense such as
insanity, the defendant has the burden of proof (preponderance of the evidence)
and the burden of persuasion, and on appeal the standard of review is whether,
after considering all the evidence on the issue, the judgment is so against the
great weight and preponderance of the evidence to be manifestly unjust.Â  Meraz
v. State, 785 S.W.2d 145, 150, 154-55 (Tex. Crim. App. 1990).